

**U.S. Department of Justice**

Civil Division, Appellate Staff
950 Pennsylvania Ave. NW
Washington, D.C. 20530

Tel: 202-514-3469
February 23, 2026

VIA CM/ECF
Clifton Cislak
Clerk, United States Court of Appeals for the D.C. Circuit
E. Barrett Prettyman United States Courthouse & William B. Bryant Annex
333 Constitution Ave., NW
Washington, DC 20001

  Re: *Talbott v. United States*, No. 25-5087 (argued January 22, 2026)

Dear Mr. Cislak:

  We write to advise the Court of the Fourth Circuit's decision in *Wilkins v. Hegseth*, --- F.4th ---, No. 24-2079, 2026 WL 451911 (4th Cir. Feb. 18, 2026), concerning the application of rational-basis review to military policies involving medical conditions.

  *Wilkins* involved a challenge to the Department of War's policy denying eligibility for military service to HIV-positive individuals based on the "need to have fit servicemembers who can fulfill its military mission without complications from medical conditions that could compromise deployment functions, contribute to conflicts with foreign nations during deployment, and add costs over those generally necessary to maintain fit servicemembers." *Wilkins*, 2026 WL 451911, at *2. The plaintiffs, "who are HIV-infected but whose infections are substantially controlled with daily medication," alleged that the policy violated equal protection and the Administrative Procedure Act. *Id.* at *1.

  The Fourth Circuit upheld the policy, holding that "the Military's professional judgments" were "reasonably related to its military mission." *Wilkins*, 2026 WL 451911, at *2. The court explained that rational-basis review of military policies requires "even greater deference to the Military's explanations and judgment," its "creation of the classification," and "its military purposes." *Id.* at *5. "Its policies must be presumed as valid, and they must be upheld if, under any reasonably conceived facts, they are reasonably related to the classification." *Id.* Indeed, "the

government has 'no obligation to produce evidence' to support its policy classification, which 'may be based on rational speculation unsupported by evidence or empirical data.'" *Id.* at *3. Moreover, "there need be only one rational relationship between the disparate treatment of a class of individuals and a legitimate purpose." *Id.* at *6. Thus, even if the court considered only "financial burden[s], … the rejection of additional costs fulfills a legitimate government purpose, as needed to pass rational basis review." *Id.*

As in *Wilkins*, the Department's policy concerns a medical condition that the Department has determined undermines military readiness and unit cohesion and imposes financial burdens. Those judgments are rationally related to the Department's mission and warrant deference, as the government has explained, and the policy accordingly withstands scrutiny.

Sincerely,

BRETT A. SHUMATE
 *Assistant Attorney General*

ABHISHEK KAMBLI
 *Deputy Associate Attorney General*

MICHAEL S. RAAB
ASHLEY C. HONOLD

<u>/s/ Amanda L. Mundell</u>
AMANDA L. MUNDELL
 *Attorneys, Appellate Staff*
Civil Division, Room 7252
U.S. Department of Justice
950 Pennsylvania Ave. N.W.
Washington, D.C. 20530
Amanda.L.Mundell@usdoj.gov

2026 WL 451911
Only the Westlaw citation is currently available.
United States Court of Appeals, Fourth Circuit.

Isaiah WILKINS; Carol Coe; Natalie Noe; Minority Veterans of America, Plaintiffs - Appellees,
v.
Pete HEGSETH, in his official capacity as Secretary of Defense; Daniel Driscoll, in his official capacity as Secretary of the Army, Defendants - Appellants.
Center for HIV Law and Policy; National Alliance of State & Territorial Aids Directors; American Civil Liberties Union; American Civil Liberties Union of Virginia; Whitman-Walker Clinic, Inc.; Community Resource Initiative; Sero Project; Institute for Justice, Amici Supporting Appellees.

No. 24-2079
|
Argued: December 9, 2025
|
Decided: February 18, 2026

**Synopsis**
**Background:** Asymptomatic HIV-positive individuals and nonprofit organization brought action against Secretary of Defense and Secretary of the Army alleging that policies categorically barring asymptomatic HIV-positive individuals with undetectable viral loads from joining military violated Fifth Amendment Due Process Clause's equal protection component and Administrative Procedure Act (APA). The United States District Court for the Eastern District of Virginia, Leonie M. Brinkema, J., 745 F.Supp.3d 375, granted plaintiffs' motion for summary judgment, and denied government's motion for summary judgment. Government appealed.

**Holdings:** The Court of Appeals, Niemeyer, Circuit Judge, held that:

[1] policies did not violate Fifth Amendment Due Process Clause's equal protection component, and

[2] policies were not arbitrary and capricious.

Reversed and remanded.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

West Headnotes (10)

[1]  **Armed Services** ⟶ Relation of Military to Civil Authority

United States military is specialized society separate from civilian society, and in no other area has Supreme Court accorded Congress greater deference.

[2]  **Constitutional Law** ⟶ Disability and Disease, Physical or Mental

In civilian context, equal protection claims for unequal treatment of individuals with human immunodeficiency virus (HIV) are subject to rational basis review. U.S. Const. Amend. 5.

[3]  **Constitutional Law** ⟶ Rational Basis Standard; Reasonableness

Under rational basis scrutiny, government's differing treatment of certain classes of people will be upheld as against equal protection challenge if there is rational relationship between disparity of treatment and some legitimate governmental purpose. U.S. Const. Amend. 5.

[4]  **Constitutional Law** ⟶ Equal protection
**Constitutional Law** ⟶ Rational Basis Standard; Reasonableness

Classifications challenged pursuant to Fifth Amendment equal protection component under rational basis review are accorded strong presumption of validity and must be upheld if there is any reasonably conceivable state of facts that could provide rational basis for classification. U.S. Const. Amend. 5.

[5]  **Constitutional Law** ⟶ Equal protection

**Constitutional Law**  Rational Basis Standard;  Reasonableness

To satisfy rational basis review of claim under Fifth Amendment's equal protection component, government has no obligation to produce evidence to support its policy classification, which may be based on rational speculation unsupported by evidence or empirical data. U.S. Const. Amend. 5.

[6]  **Armed Services**  Relation of Military to Civil Authority

"Military deference doctrine" requires courts to grant extra deference to military actions, judgments, and decisions.

[7]  **Armed Services**  Persons in the Armed Services, and Militia Called into Service of the United States

Fact that constitutional protections are at issue does not diminish military deference doctrine.

[8]  **Armed Services**  Persons in the Armed Services, and Militia Called into Service of the United States

**Constitutional Law**  War and national security

Department of Defense policies precluding asymptomatic HIV-positive individuals from entering military was rationally related to its mission to raise and maintain armed forces, and thus did not violate equal protection; Congress directed Defense Department to enlist and appoint able-bodied and physically qualified persons to serve in military, necessary medicine might not always be available in particular deployed settings, HIV-infected persons could not donate blood for emergency transfusions, cost of maintaining HIV-infected soldier was substantially higher than cost of maintaining otherwise medically fit soldier, and some host nations had laws that restricted or prohibited entry or presence of individuals with HIV. U.S. Const. Amend. 5; 10 U.S.C.A. §§ 505(a), 532(a)(3).

[9]  **Administrative Law and Procedure**  Review for arbitrary, capricious, unreasonable, or illegal actions in general

Agency actions are "arbitrary and capricious" for purposes of judicial review if agency relied on factors that Congress has not intended it to consider, entirely failed to consider important aspect of problem, offered explanation for its decision that runs counter to evidence before agency, or is so implausible that it could not be ascribed to difference in view or product of agency expertise. 5 U.S.C.A. § 706(2)(A).

[10]  **Armed Services**  Persons in the Armed Services, and Militia Called into Service of the United States

Department of Defense policies precluding asymptomatic HIV-positive individuals from entering military was rationally related to its mission to raise and maintain armed forces, and thus were not arbitrary and capricious, in violation of Administrative Procedure Act (APA); Congress directed Defense Department to enlist and appoint able-bodied and physically qualified persons to serve in military, necessary medicine might not always be available in particular deployed settings, HIV-infected persons could not donate blood for emergency transfusions, cost of maintaining HIV-infected soldier was substantially higher than cost of maintaining otherwise medically fit soldier, and some host nations had laws that restricted or prohibited entry or presence of individuals with HIV. 5 U.S.C.A. § 706(2)(A); 10 U.S.C.A. §§ 505(a), 532(a)(3).

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (1:22-cv-01272-LMB-IDD)

**Attorneys and Law Firms**

ARGUED: Bradley Alan Hinshelwood, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellants. Scott A. Schoettes, Palm Springs, California; Linda T. Coberly, WINSTON & STRAWN LLP, Houston, Texas, for Appellees. ON BRIEF: Brett A. Shumate, Assistant Attorney General, Charles W. Scarborough, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Erik S. Siebert, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellants. Peter E. Perkowski, PERKOWSKI LEGAL, PC, Los Angeles, California; Bryce A. Cooper, Chicago, Illinois, Robert T. Vlasis, III, Hannah M. Shankman, Washington, D.C., Thanh D. Nguyen, WINSTON & STRAWN LLP, Dallas, Texas; Gregory R. Nevins, Decatur, Georgia, Nicholas J. Hite, LAMBDA LEGAL DEFENSE & EDUCATION DEFENSE FUND, INC., Dallas, Texas, for Appellees. Kara N. Inglehart, LGBTQI+ Rights Clinic, Bluhm Legal Clinic, NORTHWESTERN PRITZKER SCHOOL OF LAW, Chicago, Illinois, for Amici Center for HIV Law and Policy, National Alliance of State & Territorial AIDS Directors, American Civil Liberties Union, American Civil Liberties Union of Virginia, Whitman-Walker Clinic, Inc., Community Resource Initiative, and Sero Project. Andrew Ward, INSTITUTE FOR JUSTICE, Arlington, Virginia, for Amicus Institute for Justice.

Before NIEMEYER, RICHARDSON, and RUSHING, Circuit Judges.

**Opinion**

Reversed and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Richardson and Judge Rushing joined.

NIEMEYER, Circuit Judge:

*1 The U.S. Department of Defense and the U.S. Army (collectively, sometimes, "the Military") have adopted and enforced policies that deny induction into the military service of persons infected with HIV. *See* Department of Defense Instruction 6485.01, *Human Immunodeficiency Virus (HIV) in Military Service Members* § 3(a) (June 7, 2013); Army Reg. 600-110, *Identification, Surveillance, and Administration of Personnel Infected with Human Immunodeficiency Virus* 1–16 (April 22, 2014). HIV infection is on a list of hundreds of medical conditions that the Military identifies as disqualifying, including, among others, autism and a history of sleep apnea, heart valve surgery, inflammatory bowel disease, adult psoriasis, severe headaches, and acute allergic reactions to foods such as fish, peanuts, and tree nuts. The Military has explained that it seeks to enroll only individuals who present no health-related complications to the roles servicemembers might perform, their deployment conditions, their efficiency, and the costs for their maintenance as servicemembers.

The individual plaintiffs, who are HIV-infected but whose infections are substantially controlled with daily medication, as well as Minority Veterans of America, a nonprofit organization supporting persons such as the individual plaintiffs, commenced this action against the Secretary of Defense and the Secretary of the Army, alleging that the Military's policies violate their equal protection rights under the Fifth Amendment's Due Process Clause and are arbitrary and capricious, in violation of the Administrative Procedure Act ("APA"). They rely heavily on our decision in *Roe v. Department of Defense*, 947 F.3d 207 (4th Cir. 2020), where we held that the Military's inconsistent and non-individualized treatment of military personnel who had contracted HIV during their military service was likely arbitrary, capricious, and inconsistent with modern science.

The district court applied *Roe* and issued a permanent injunction in this case, prohibiting the Military from enforcing its HIV policies related to joining the armed forces and mandating that it reevaluate decisions that it had made based on those policies.

[1] In reviewing a judgment of the kind presented here, we recognize that the U.S. Military is "a specialized society separate from civilian society," *Parker v. Levy*, 417 U.S. 733, 743, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), and that "in no other area has the [Supreme] Court accorded Congress greater deference," *Chappell v. Wallace*, 462 U.S. 296, 301, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (quoting *Rostker v. Goldberg*, 453 U.S. 57, 64–65, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981)). Moreover, we layer this deference over the already relaxed standard of rational basis review that otherwise applies to cases of the kind presented here. *See Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (explaining that, when rational basis review applies, the different treatment of classes will be upheld "if there is a rational relationship between [that] treatment and some legitimate governmental purpose"); *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1267 (4th Cir. 1995) (applying

rational basis review to HIV status). Here, we are dealing with persons denied enlistment into the Military, and therefore their claims are reviewed under a relaxed application of civilian law. *See Rostker*, 453 U.S. at 67, 83, 101 S.Ct. 2646 (recognizing that the "tests and limitations" to be applied under the Due Process Clause "differ because of the military context" and holding that Congress's decision to authorize the registration of men and not women fell "well within its constitutional authority").

**\*2** In this case, the Military has articulated its need to have fit servicemembers who can fulfill its military mission without complications from medical conditions that could compromise deployment functions, contribute to conflicts with foreign nations during deployment, and add costs over those generally necessary to maintain fit servicemembers. Finding the Military's professional judgments in this case reasonably related to its military mission, we conclude that the plaintiffs' claims fail as a matter of law. In doing so, we distinguish our decision in *Roe*, as that case dealt with the manner in which the Military treated military personnel who contracted HIV while in service and who could benefit from various available waivers for assignments but were denied them and discharged arbitrarily. *See Roe*, 947 F.3d at 221–23.

Accordingly, we reverse the district court's judgment and remand with instructions to enter judgment for the Military.

I

Isaiah Wilkins, Carol Coe, and Natalie Noe have been diagnosed with HIV but are currently receiving medical treatment such that their disease is asymptomatic with "undetectable viral load[s]," meaning that they have less than 50 virus copies per milliliter of blood. *See Roe*, 947 F.3d at 213. All three individual plaintiffs have sought to either enlist or reenlist in the Army and have been denied that opportunity under the Military's medical policies. Minority Veterans of America, a nonprofit organization whose mission is to "create community, belonging, and advance equity for minority veterans," supports these individual plaintiffs' efforts.

As we have recognized, the human immunodeficiency virus (HIV) causes acquired immunodeficiency syndrome (AIDS), from which thousands of Americans have died. *Roe*, 947 F.3d at 212. HIV can be transmitted when certain infected body fluids encounter damaged tissue, mucous membranes, or the bloodstream. *Id.* at 213. By the 1990s, however, a one-tablet antiretroviral regime was developed, which, when followed by taking the pill once a day, suppresses the "viral load" (the number of viral copies in the blood). *Id.* This antiretroviral therapy has increased the infected person's quality of life and decreased the chances of transmitting HIV. *Id.* Even with that treatment, however, the infected person must be tested on a regular basis, and HIV infection, at whatever level, precludes the infected person from donating blood. *Id.* at 213–14.

Acting under Congress's direction to enlist and appoint able-bodied and physically qualified persons to serve in the Military, *see* 10 U.S.C. §§ 505(a), 532(a)(3), the Department of Defense, as well as the individual military branches, including the Army, have adopted fitness policies for induction. In particular, Department of Defense Instruction (DoDI) 6130.03 sets out the physical and medical standards for appointment, enlistment, or induction into the Military, which are applicable to all military branches. The policy includes hundreds of medical conditions that are considered disqualifying, including medical conditions such as autism and a history of sleep apnea, heart valve surgery, inflammatory bowel disease, adult psoriasis, severe headaches, and acute allergic reactions to foods such as fish, peanuts, and tree nuts. DoDI 6130.03, Vol. 1, *Medical Standards for Military Service: Appointment, Enlistment, or Induction* § 6 (May 6, 2018). The policy also includes, as disqualifying, communicable diseases, such as hepatitis, and chronic conditions that can be managed through medication, such as asthma, hypertension, diabetes, and ADHD. *Id.* And more particularly, the policy lists a "history of disorders involving the immune mechanism, including immunodeficiencies" as a disqualifying "systemic condition." *Id.* § 6.23 (cleaned up).

Thus, consistent with DoDI 6130.03, the Department of Defense adopted a policy to "[d]eny eligibility for military service to persons with laboratory evidence of HIV infection for appointment (other than covered personnel who are seeking to commission while a Service member), enlistment, pre-appointment, or initial entry training for military service." DoDI 6485.01, *Human Immunodeficiency Virus (HIV) in Military Service Members* § 3(a) (June 7, 2013). Similarly, the Army adopted a regulation providing that HIV is a disqualifying condition. The Army regulation incorporates DoDI 6485.01 and specifically provides that "HIV infected personnel are not eligible for appointment or enlistment into the Active Army, the ARNG [Army National Guard], or the USAR [Army Reserve]." Army Regulation 600-110,

*Identification, Surveillance, and Administration of Personnel Infected with Human Immunodeficiency Virus* 1–16 (April 22, 2014).

**\*3** The plaintiffs commenced this action against the Military, alleging that the Military's policies denying enlistment or appointment to persons infected with HIV violate the equal protection component of the Fifth Amendment's Due Process Clause and, because they are therefore arbitrary and capricious, the APA.

On the plaintiffs' motion, the district court granted summary judgment to the plaintiffs, concluding that the Military's policies are "irrational, arbitrary, and capricious," in violation of both the Fifth Amendment and the APA. *Wilkins v. Austin*, 745 F. Supp. 3d 375, 378, 387 (E.D. Va. 2024). In doing so, the court rejected the Military's rationales for the policies based on (1) medical and scientific considerations, (2) higher costs, and (3) diplomatic deference to foreign allies and partners. *Id.* at 388–97. The court entered a permanent injunction (1) enjoining defendants from denying the plaintiffs and other similarly situated asymptomatic HIV-positive individuals with undetectable viral loads accession into the Military based on their HIV status; (2) enjoining defendants from enforcing the HIV-specific provisions of their policies, including DoDI 6485.01, DoDI 6130.03, and AR 600-110; and (3) ordering the Army to "reevaluate the decisions to remove plaintiff Wilkins from his earned position at [the U.S. Military Academy Preparatory School] in a manner consistent with [this] injunctive relief." *Id.* at 398.

From the district court's final judgment dated August 20, 2024, the Military filed this appeal, and on December 9, 2025, after hearing oral argument in this case, we issued an order staying enforcement of the district court's injunction and judgment pending this decision.

II

The single question presented here is whether the Military's policies denying induction into the military service of persons infected with HIV discriminate against those persons in violation of the Fifth Amendment and are arbitrary and capricious in violation of the APA. To answer this question, we begin with the applicable standard for reviewing those policies.

A

**[2] [3] [4] [5]** In the civilian context, we review claims under the Fifth Amendment for unequal treatment of individuals with HIV on the well understood rational basis review. *See Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1267 (4th Cir. 1995). Under rational basis scrutiny, the government's differing treatment of certain classes of people will be upheld "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). Classifications under rational basis review are "accorded a strong presumption of validity" and must be upheld "if there is *any reasonably conceivable state of facts* that could provide a rational basis for the classification." *Id.* at 319–20, 113 S.Ct. 2637 (emphasis added) (cleaned up). Thus, the rational basis standard of review is "a relatively relaxed standard." *United States v. Skrmetti*, 605 U.S. 495, 522, 145 S.Ct. 1816, 222 L.Ed.2d 136 (2025) (cleaned up). Indeed, to satisfy the standard, the government has "no obligation to produce evidence" to support its policy classification, which "may be based on rational speculation unsupported by evidence or empirical data." *Heller*, 509 U.S. at 320, 113 S.Ct. 2637 (cleaned up).

But in this case, we are not in a civilian context, but rather a military one, and our review in that context implicates the "military deference doctrine" that arises from the Constitution's commitment of military affairs to the political branches and the Military's particular needs and purposes. Article I commits plenary and exclusive authority to Congress "[t]o raise and support Armies" and "[t]o make Rules for the Government and Regulation of the land and naval Forces." U.S. Const. art. I, § 8, cl. 12, 14. Article II specifies that the President is the "Commander in Chief of the Army and Navy." *Id.* art. II, § 2, cl. 1. In turn, Congress has exercised its authority and authorized the President to "prescribe regulations to carry out his functions, powers, and duties" with respect to the armed forces. 10 U.S.C. § 121. Thus, the "responsibility for determining how best our Armed Forces shall attend" the task of maintaining national security and fighting wars "rests with Congress and with the President." *Schlesinger v. Ballard*, 419 U.S. 498, 510, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975) (citation omitted).

**\*4** In this scheme, not only does the Constitution assign no responsibility over military matters to the judiciary, but

the judiciary especially lacks competence in this area. As the Supreme Court noted in *Rostker v. Goldberg*,

> [I]t is difficult to conceive of an area of governmental activity in which the courts have less competence. The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject *always* to civilian control of the Legislative and Executive Branches.

453 U.S. 57, 65–66, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981) (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973)). As Alexander Hamilton explained it, the Executive "holds the sword of the community"; "[t]he judiciary on the contrary has no influence over ... the sword." *The Federalist No. 78*, at 402 (Alexander Hamilton) (George W. Carey & James McClellan eds., 1990). In view of this constitutional structure, the courts "have been reluctant to intrude upon the authority of the Executive in military and national security affairs." *Dep't of Navy v. Egan*, 484 U.S. 518, 530, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988).

**[6]** Accordingly, the judiciary has long recognized a "military deference doctrine," requiring courts to grant extra deference to military actions, judgments, and decisions. *See* John F. O'Connor, *The Origins and Application of the Military Deference Doctrine*, 35 Ga. L. Rev. 161 (2000) (outlining the history of the Supreme Court's practice of non-interference and deference to Congress and the President with regard to military regulations).

**[7]** While the Supreme Court has not defined the exact shape of this deference, it has nonetheless described it as substantial. It has explained, "For the reasons which differentiate military society from civilian society, we think Congress is permitted to legislate both with *greater breadth* and with *greater flexibility* when prescribing the rules by which the former shall be governed than it is when prescribing rules for the latter." *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (emphasis added); *see also Rostker*, 453 U.S. at 64–65, 101 S.Ct. 2646 (noting that "perhaps in no other area has the Court accorded Congress *greater deference*" than in the context of military affairs (emphasis added)); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (stating that it gives "*great deference* to the professional judgment of military authorities concerning the relative importance of a particular military interest" (emphasis added) (quoting *Goldman v. Weinberger*, 475 U.S. 503, 507, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986))); *Weiss v. United States*, 510 U.S. 163, 178, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994) (noting that judicial deference is *"at its apogee"* when reviewing congressional decisionmaking in the military context (emphasis added) (quoting *Rostker*, 453 U.S. at 70, 101 S.Ct. 2646)). And the fact that constitutional protections are at issue does not diminish the military deference doctrine. As the Supreme Court explained in *Rostker*, while "Congress remains subject to the limitations of the Due Process Clause, ... the tests and limitations to be applied may differ because of the military context. We of course do not abdicate our ultimate responsibility to decide the constitutional question, but simply recognize that the Constitution itself requires such deference to congressional choice." 543 U.S. at 67, 125 S.Ct. 460. So must it be as we apply the Due Process Clause of the Fifth Amendment to the Military in this case.

**\*5** At bottom, while applying the civilian rational basis review to determine whether the Military's policies are rationally supported, we must yet give even greater deference to the Military's explanations and judgments. Its policies must be presumed as valid, and they must be upheld if, under any reasonably conceived facts, they are reasonably related to the classification. And in doing so, we must defer to the Military's creation of the classification, its explanations, and its military purposes.

B

In this case, the Military has described its mission and purpose, consistent with constitutional assignments:

> The Military's primary purpose is to prepare for and win military conflicts. The Military cannot be ready to deploy, fight, and win our Nation's wars without recruiting and retaining high quality, physically fit, medically qualified soldiers who can deploy, fight, and win decisively on any current or future battlefield. In particular, the Military is required to prepare for a range of possible conflicts — not solely operations against low-level insurgencies, as in

recent conflicts in Afghanistan and Iraq, but also a large-scale conflict with a near-peer military, such as China.

\* \* \*

In the event of such a conflict ... the Military seeks to ensure that soldiers can rapidly deploy to high-stress environments to combat operations with minimal complications or delays. That can include deployment to forward operating positions or other locations where resupply or medical treatment is unreliable or challenging because of enemy action, remoteness, or other reasons.

(Cleaned up).

This mission and purpose, we conclude, are legitimate ones for the Military. *See Chappell v. Wallace*, 462 U.S. 296, 300–01, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Gilligan*, 413 U.S. at 10, 93 S.Ct. 2440 ("The complex[,] subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject *always* to civilian control of the Legislative and Executive Branches").

In light of this mission and purpose, which the plaintiffs do not challenge, medical conditions of all kinds may become relevant as they may limit a soldier's fitness to deploy and implicate other relevant considerations. And both Congress and the Executive have demanded fitness. *See* 10 U.S.C. §§ 505(a), 532(a)(3); DoDI 6130.03 § 1.2. As to HIV-infected persons in particular, the Military has concluded that HIV-infected persons, even under an effective antiretroviral regimen, present conditions that could limit or complicate the Military's mission. It explains that, even while such persons are asymptomatic and their viral loads are undetectable, below 50 viral copies per milliliter of blood, their medical condition, like many others, still requires having medication available, taking medication once a day, having regular testing, and limiting aspects of their roles when deployed. The HIV infection is never eliminated and always presents risks that require additional attention, can cause complications, and does cost money.

The Military has applied those medical facts to its military mission, explaining that necessary medicine may not always be available in particular deployed settings, as "far forward positions close to front lines have minimal or no access to mail-order pharmacy or other resupply," and, it adds, even in more "established areas of operation," the medicine may not always be available. Moreover, if an HIV-infected servicemember were to attempt to carry his medication during military operations, it could be lost or destroyed.

\*6 In view of the fact that HIV-infected persons must also be tested on a regular basis, the additional "time, energy, and resources to collect, transport for testing at an appropriate facility and by appropriate trained personnel, and [have] results [returned] in a timely manner" will burden the Military. Indeed, at forward positions, testing might not even be possible.

Moreover, the Military notes that "deployed soldiers must be prepared to donate blood directly to other soldiers through an emergency blood collection system known as the 'walking blood bank,' " yet all agree that HIV-infected persons cannot donate blood as even a low level of viral copies could infect the recipient. The Military recited how this Military need was exemplified during the operations in Iraq and Afghanistan, when "over 6,000 such transfusions were performed."

The Military thus argues that "the combined effect of these considerations is to put the [M]ilitary to choices it does not face with healthy individuals. Deploying individuals with HIV to certain postings would require the [M]ilitary to accept risks of mission degradation or transmission."

In addition to these deployment considerations, the Military has also shown that the cost of maintaining an HIV-infected soldier is substantially higher than the cost of maintaining an otherwise medically fit soldier. The government presented detailed evidence showing that antiretroviral therapy costs approximately $10,000 to $20,000 per person on an annual basis.

Finally, the government notes that HIV implicates unique foreign affairs concerns, as U.S. forces are often dependent on the consent or invitation of a host nation for their continued presence. It points out that "many of those host nations have their own laws on a range of issues — such as alcohol, pornography, and other matters — that are more restrictive than U.S. law, and the [M]ilitary generally respects these laws to preserve amicable relations." Among these laws are laws that restrict or prohibit the entry or presence of individuals with HIV, such as was the case with respect to U.S. forces in Kuwait. This complication, according to the Military, not only puts the HIV-positive members at risk of deportation, but it also "threaten[s] the U.S. military's future presence and operations in that country."

Of course, under the rational basis standard of review, there need be only one rational relationship between the disparate treatment of a class of individuals and a legitimate purpose. *Heller*, 509 U.S. at 320, 113 S.Ct. 2637. Thus, even if we were to consider, for example, only the financial burden that an HIV-infected soldier would place upon joining the Military, the rejection of additional costs fulfills a legitimate government purpose, as needed to pass rational basis review. *See Armour v. City of Indianapolis*, 566 U.S. 673, 682–84, 132 S.Ct. 2073, 182 L.Ed.2d 998 (2012) ("possibly spend[ing] hundreds of thousands of dollars keeping a computerized dead-tracking system current" provides a rational basis for a tax-related classification). But all of the considerations advanced by the Military are reasonable military judgments related to the Military's legitimate mission, and because they are rationally related to its legitimate military mission, its policies are valid.

The plaintiffs argue nonetheless that "well-managed HIV does not affect a person's ability to perform all the duties of military service and that people with well-managed HIV present no real risk to themselves or others." Ruling otherwise, they argue, could be inconsistent with our decision in *Roe.*

*7 Much of what the plaintiffs argue is, indeed, supported by *Roe.* Plaintiffs' HIV infections are well managed, and they can perform most of the duties of military service. Also, the risk they pose for transmission of the disease is very low. *Roe*, 947 F.3d at 213–14. As *Roe* concluded, "Those who are timely diagnosed and treated experience few, if any, noticeable effects on their physical health and enjoy a life expectancy approaching that of those who do not have HIV." *Id.* at 214 (internal quotation marks omitted). We do not question these findings.

But *Roe* also acknowledged that to attain that degree of fitness, the soldier must take the antiretroviral pill daily and must be tested regularly, and he or she may not donate blood. 947 F.3d at 213–14. And it is these aspects of the condition that prompt the Military to deny enlistment. *Roe*'s findings relating to HIV-infected persons do not contradict the Military's concerns.

The Military points out that during forward deployments, the risk of supplying medication is significant, as is the burden of testing, and it is concerned that HIV-infected persons cannot serve as part of the "walking blood bank." In addition to these deployment issues, the Military identifies the conflict HIV-infected persons might create when deployed to certain other nations. And finally, it points to the additional cost to the Military to maintain an HIV-infected person. All of these considerations are rational concerns when deciding whom to admit into the Military.

Although we considered similar deployment and diplomatic issues in *Roe*, that decision addressed materially distinguishable circumstances. There, among other issues, we considered a categorical ban on deployment of *current* servicemembers, rather than the rationales undergirding forward-looking policies related to *initial entry* that are presented here. As the district court here recognized, "the validity" of the prohibition on the induction of "asymptomatic HIV-positive individuals with undetectable viral loads was not presented" in *Roe. Wilkins*, 745 F. Supp. 3d at 386. Moreover, *Roe*'s holding on the categorical ban on deployment was based on a scant evidentiary record, in which the military "offered *no* rationale for its policy of non-deployment for HIV-positive servicemembers, nor [did] it identif[y] the evidence it considered in formulating the policy." *Roe*, 947 F.3d at 225. Unlike in *Roe*, however, the Military here has provided substantial evidence explaining its rationales in light of its mission.

The plaintiffs also argue that the additional-cost aspect does not pass a rational basis standard, citing various lower court opinions decided in the civilian context. But doing so hardly defers to the military judgment that costs are a legitimate concern in raising and maintaining an army, and the plaintiffs simply do not address this obvious concern, stating only that the Military's evidence was unimpressive. Yet, under the rational basis standard, the Military was not required to provide impressive evidence of cost. Rather, its concern of additional cost must be assessed as rational in relation to raising and maintaining an army. And it can hardly be deemed unreasonable for the Military to refuse to admit a class of persons who will cost the Military more money than will persons outside of that class.

While the Military successfully demonstrates the reasonableness of its classification under the rational basis standard, in this military context, we must also defer to its military judgments. Of course, when the Military acts in the context of military affairs, it "remains subject to the limitations of the Due Process Clause," but "the tests and limitations to be applied may differ because of the military context." *Rostker*, 453 U.S. at 67, 101 S.Ct. 2646; *see also Weiss*, 510 U.S. at 176, 114 S.Ct. 752.

**\*8** **[8]** We conclude that the Military, acting in furtherance of its mission to raise and maintain the armed forces, did not run afoul of the Due Process Clause applied in the military context when adopting and enforcing its HIV policies.

C

**[9]** The plaintiffs' APA claims fail under the same reasoning as do their constitutional claims. The APA authorizes courts to "hold unlawful and set aside agency action, findings, and conclusions" that are determined to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency actions are arbitrary and capricious if the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

The district court reasoned that "rational-basis review of an equal protection claim in the context of agency action is similar to that under the APA," and in those cases "the equal-protection argument is folded into the APA argument ... and the only question is whether [the Military's classification of plaintiffs] was rational (*i.e.*, not arbitrary and capricious)." *Wilkins*, 745 F. Supp. 3d at 388 (cleaned up) (quoting *Cooper Hosp./Univ. Med. Ctr. v. Burwell*, 179 F. Supp. 3d 31, 47 (D.D.C. 2016)). On appeal, the parties likewise combine rational-basis and arbitrary-capricious review, and the plaintiffs present a single set of arguments aimed almost exclusively at the former.

**[10]** In this circumstance, since the Military's categorical prohibition on the entry of HIV-positive individuals into the Military passes rational basis review in several respects, such agency action is not arbitrary and capricious so as to violate the APA. The Military's policy to deny HIV-infected persons from joining the Military well satisfies the rational basis review under the equal protection component of the Due Process Clause, particularly in the military context, when the Military is making a judgment about raising and supporting armies. The same considerations render the plaintiffs' APA claims untenable.

\* \* \*

Accordingly, we reverse the district court's judgment dated August 20, 2024, and remand with instructions to enter judgment for the Military.

REVERSED AND REMANDED

**All Citations**

--- F.4th ----, 2026 WL 451911

---