[ORAL ARGUMENT HELD JANUARY 22, 2026]

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

NICOLAS TALBOTT, et al.,

Plaintiffs-Appellees,

v.                                                          No. 25-5087

UNITED STATES OF AMERICA, et al.,

Defendants-Appellants.

## MOTION TO STAY MANDATE PENDING
## PETITION FOR WRIT OF CERTIORARI

Defendants-appellants (collectively, United States) respectfully request that this Court stay the issuance of its mandate pending the disposition of the United States' forthcoming timely petition for a writ of certiorari. *See* Fed. R. App. P. 41(d)(1)-(2). This Court's decision affirming (as to current servicemember plaintiffs) an injunction against a 2025 policy disqualifying from military service individuals with a history of gender dysphoria raises a "substantial question" warranting Supreme Court review. Fed. R. App. P. 41(d)(1). Indeed, the Supreme Court has *already* stayed an injunction of the same policy pending its disposition of any petition for certiorari. *United States v. Shilling*, 145 S. Ct. 2695 (2025). And the Supreme Court's recent decision in *W. Virginia v. B.P.J. by Jackson* (*B.P.J.*), No.

24-38, 2026 WL 1868739, at *1 (U.S. June 30, 2026)—which post-dates the merits panel's decision—underscores that the United States' forthcoming certiorari petition will present a substantial question.

The government anticipates filing a petition for a writ of certiorari by August 30, 2026, and does not intend to seek an extension. Plaintiffs oppose this motion.

**STATEMENT**

1.    As the Court is aware, this case involves a constitutional challenge to a policy enacted by the Department of War that disqualifies individuals with gender dysphoria from military service. In early 2025, President Trump issued Executive Order 14183, stating that "[i]t is the policy of the United States Government to establish high standards for troop readiness, lethality, cohesion," and "uniformity," among other traits, and that this "policy is inconsistent with the medical, surgical, and mental health constraints on individuals with gender dysphoria." 90 Fed. Reg. 8757, 8757 (Feb. 3, 2025). The Order directed the Department of War (Department) to update its medical standards. *Id.* at 8757-58.

The Department issued the challenged policy on February 25, 2025, having determined that, in its best military judgment, individuals "who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria" or "who have a history of cross-sex hormone therapy or a history of sex reassignment or genital reconstruction surgery" are disqualified from military service. JA53-55.

But these individuals "may be considered" for a waiver where "there is a compelling Government interest," and they (1) "demonstrate[] 36 consecutive months of stability," (2) "demonstrate[] that [they have] never attempted to transition" to a different sex, and (3) are "willing and able to adhere to all applicable standards, including the standards associated with [their] sex." JA55; *see also* JA210-11.

**2.** Plaintiffs in this case are trans-identifying current and aspiring servicemembers. JA1223. They allege that President Trump's Executive Order and the 2025 Department of War policy violate equal protection. JA1224. The district court entered a preliminary injunction barring the government from implementing the Executive Order and the 2025 policy. JA1207-08.

**3.** This Court granted a stay of the preliminary injunction pending resolution of the government's appeal. *Talbott v. United States*, 2025 WL 3533344, at *1 (D.C. Cir. Dec. 9, 2025) (per curiam). The stay panel expressed "doubt that the policy triggers any form of heightened scrutiny," but recognized that even heightened scrutiny would require "deference to the military." *Id.* at *5 (concurring statement by Judges Katsas and Rao). Against that backdrop, the majority concluded that the policy "is likely constitutional because it reflects a considered judgment of military leaders and furthers legitimate military interests." *Id.* at *7. The majority also rejected Plaintiffs' arguments regarding animus, focusing on "the text and sources informing the Hegseth Policy, not extrinsic statements made about it," and

explaining that the policy "advances legitimate military interests." *Id.* at *10. Finally, the majority concluded that the remaining stay factors favored the government and that the district court "erred in universally enjoining the Hegseth Policy rather than merely providing as-applied relief to the plaintiffs." *Id.* at *11 n.2. Judge Pillard dissented, characterizing the 2025 policy as "a ban on transgender troops writ large." *Id.* at *13 (Pillard, J., dissenting).

**4.** After merits briefing and oral argument, a divided panel of this Court affirmed the injunction in part and vacated it in part, with a majority of the panel (Judges Wilkins and Rogers) affirming the injunction with respect to currently serving members, and a different majority (Judges Wilkins and Walker) vacating the injunction as to those seeking admission to the military. *Talbott v. United States*, 176 F.4th 720, 750 (D.C. Cir. 2026).

The panel majority did not subject the policy to heightened scrutiny; Judge Wilkins derived from caselaw in the military context "something akin to a 'reasonable and evenhanded' test," under which the government must show whether a classification is sufficiently related to a legitimate governmental interest. *Talbott*, 176 F.4th at 739. Applying that test, the majority found that the policy was likely unconstitutional. Judge Rogers concurred in part. She did not squarely determine what level of scrutiny applied but concluded that the policy failed constitutional scrutiny even under rational basis review because, in her view, the policy was not

explainable by anything other than animus. *Id.* at 752 (Rogers, J., concurring in part and dissenting in part). Judge Walker dissented. He stressed the long history of judicial deference to the military's judgment about the composition, training, and operation of our nation's armed forces, *id.* at 760-770 (Walker, J., dissenting). And he noted that, although the political branches "do not need to make such a thorough showing to earn judicial deference," ample evidence supported the Department's 2025 policy. *Id.* at 771-73 (Walker, J., dissenting).

5.    A similar challenge to the Executive Order and 2025 policy is pending in the Ninth Circuit. In *Shilling v. United States*, the district court issued a universal preliminary injunction. 773 F. Supp. 3d 1069, 1078-79 (W.D. Wash. 2025). The Ninth Circuit denied the government's request for an administrative stay and a stay pending appeal. On May 6, 2025, the Supreme Court granted the government's application for a stay of the injunction pending disposition of its appeal and any further review in the Supreme Court. *See United States v. Shilling*, 145 S. Ct. 2695 (2025).

## ARGUMENT

To obtain a stay of the mandate "pending the filing of a petition for a writ of certiorari in the Supreme Court," a movant "must show that the [certiorari] petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1). That standard is plainly satisfied here.

1. The United States intends to file a petition for a writ of certiorari by August 30, 2026. That petition will present a "substantial question." This Court has upheld, on equal-protection grounds, a constitutional challenge to a military-service policy issued by the Secretary of War, prompted by an Executive Order issued by President Trump shortly after he entered office in 2025. The Supreme Court regularly grants review in such circumstances.

Indeed, as noted, the Supreme Court has *already* voted to stay an injunction of the same policy pending any petition for certiorari in that case. *United States v. Shilling*, 145 S. Ct. 2695 (2025). In doing so, the Court necessarily found that the government had established a likelihood that the Court would grant certiorari and that the Court would likely reverse if the injunction were affirmed.[1] *See Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam). The Supreme Court in *Shilling* also determined—by staying the injunction not only pending appeal, but

---

[1] The panel majority suggested that the Supreme Court's stay in *Shilling* "could have been based on impropriety of the universal nature of the injunction." *Talbott*, 176 F.4th at 740 n.11. Respectfully, that is incorrect. In *Shilling*, the United States requested "a stay of the injunction in its entirety pending further review," or, only in the alternative, a stay of "the injunction's universal scope, so that the injunction blocks the implementation of the 2025 policy only as to the eight individual respondents in this case." Application for a Stay of the Injunction Issued by the United States District Court for the Western District of Washington at 4, *United States. v. Shilling*, No. 24A1030 (U.S. Apr. 24, 2025). The Supreme Court stayed the injunction in full—including as applied to the named plaintiffs. That stay order thus cannot be interpreted as pertaining only to the universal scope of the injunction.

also *pending the disposition of any petition for certiorari*—that the Department should be permitted to implement the 2025 policy until the Supreme Court itself has an opportunity to consider the issue. That determination should control this Court's resolution of the same interim-relief issue here. *See Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). Seven years ago, furthermore, the Supreme Court also granted stays of two injunctions against the similar Mattis policy. *Trump v. Karnoski*, 586 U.S. 1124 (2019); *Trump v. Stockman*, 586 U.S. 1124 (2019). This will be the first time the constitutionality of such a policy reaches the Supreme Court on the merits, and there is—at a minimum—a substantial likelihood that the Court will grant review.

The government appreciates that a majority of the panel disagreed with our arguments, at least as to currently serving servicemembers. On the other hand, the dissenting judge and two members of the stay panel assessed the merits differently. And in all events, granting a stay of the mandate under Rule 41 does not require this Court to agree that the Supreme Court is likely to reverse the panel's own decision— a conclusion presumably virtually no panel would ever reach. By granting a stay of the mandate, the Court merely affords the Supreme Court an orderly opportunity to consider the case and decide whether to grant review—and if it does, to take the time the Supreme Court needs to render a decision. *See* Fed. R. App. P. 41(d)(2)(B)(ii). This Court should allow the Supreme Court that opportunity, because the government's arguments in this case are at the very least substantial.

Furthermore, even aside from *Shilling* and the divided views among members of this Court, there is particularly good reason to expect the Supreme Court to take a certiorari petition in this case very seriously. The Supreme Court has in recent years demonstrated keen interest in both the level and the form of equal-protection scrutiny applicable to claims of discrimination against trans-identifying plaintiffs, *see, e.g.*, *W. Virginia v. B.P.J. by Jackson* (*B.P.J.*), No. 24-38, 2026 WL 1868739, at *1 (U.S. June 30, 2026); *United States v. Skrmetti*, 605 U.S. 495 (2025), and in the proper constitutional treatment of assertions of animus by the President or other senior Executive officials, *see Mullin v. Doe*, Nos. 25-1083 and 25-1084, 2026 WL 1825840 (U.S. June 25, 2026); *Trump v. Hawaii*, 585 U.S. 667 (2018). Against this background, the government's certiorari petition in this case will present a substantial question.

The Supreme Court's recent decision in *B.P.J.*, which post-dates this Court's decision, also casts doubt on this Court's analysis, heightening the likelihood of Supreme Court review. For example, the panel faulted the Department's policy for supposedly excluding all individuals with a history of gender dysphoria, even if that history was not recent. 176 F.4th at 741. But as the Supreme Court's decision in *B.P.J.* makes clear, the validity of Department's policy depends on whether it bears a rational relation "to the general problem," not "the extent to which it furthers the Government's interest in an individual case." 2026 WL 1868739, at *12 (citation

omitted). Likewise, the majority was critical of the waiver criteria in the Department's policy. 176 F.4th at 741. But the Supreme Court in *B.P.J.* stressed that "as long as the relationship is sufficient as a general matter, the [government] is not constitutionally required to grant individualized exemptions." 2026 WL 1868739, at *13. The Supreme Court's decision in *Mullin*, and Justice Thomas's concurring opinion in *B.P.J.*, also suggest the Supreme Court may assess the animus allegations here differently than this Court. *Compare B.P.J.*, 2026 WL 1868739, at *17 (Thomas, J., concurring), and *Mullin*, 2026 WL 1825840, at *12, *with Talbott*, 176 F.4th at 743, 745.

Again, for present purposes, the Court need not agree with these observations or believe that the Supreme Court would reverse if it granted review. The Court need only recognize that the government's certiorari petition will present a "substantial question" for the Supreme Court's consideration. Plainly it will.

2.    There is also "good cause" for the requested stay. Fed. R. App. P. 41(d)(1). Unless the mandate is stayed, the motion panel's stay will dissolve upon issuance of the mandate, allowing the injunction to go into effect. That would upend the existing status quo, which has been in effect since the stays granted by the Supreme Court in *Shilling* and this Court here, and would require the military instead to implement a policy that it has determined poses "substantial risks" to an effective national defense. The Supreme Court has emphasized that courts must "defer" to

9

"specific, predictive judgments" by senior military officials "about how [a] preliminary injunction would reduce the effectiveness" of military operations. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 27 (2008). Those judgments are reflected in the status quo, and that status quo should not be upset until the Supreme Court has had a chance to decide whether to grant review. Again, the Supreme Court's stay in *Shilling* is dispositive. In granting a stay of that injunction pending the Court's future disposition of any petition for certiorari—including for the seven named plaintiffs in that case who were existing servicemembers—the Court necessarily found that the injunction's application even to a small number of servicemembers was causing irreparable harm to the government and to the public, and that the balance of equities did not justify leaving the injunction in place. *Hollingsworth*, 558 U.S. at 190.

Plaintiffs will suffer no irreparable injury from a stay of the mandate, let alone any injury that outweighs the harms to the military and the public. As the Supreme Court and this Court have explained in the federal employment context, "loss of income" or reputational harm "falls far short of the type of irreparable injury" necessary to support even temporary injunctive relief. *Sampson v. Murray*, 415 U.S. 61, 91 (1974). And where judicial interference would intrude on a core area of the executive branch, such as "the internal affairs of the armed forces," courts demand a "much stronger showing of irreparable harm" than in the "ordinary" case. *Hartikka*

*v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985); *see Winter*, 555 U.S. at 31-32

(reversing preliminary injunction based on the equities alone).

## CONCLUSION

This Court should stay its mandate pending the disposition of a timely filed

petition for a writ of certiorari.

Respectfully submitted,

BRETT A. SHUMATE                  MARK R. FREEMAN
*Assistant Attorney General*     MICHAEL S. RAAB

ERIC D. McARTHUR                  /s/ *Andrew M. Bernie*
*Deputy Assistant Attorney General*   ANDREW M. BERNIE
                                  (202) 514-3511
                                    Attorneys, Appellate Staff
                                    Civil Division
                                    U.S. Department of Justice
                                    950 Pennsylvania Ave., N.W.
                                    Washington, D.C. 20530

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion satisfies the type-volume limitation in Rule 27(d)(2)(A) because it contains 2,424 words. This motion complies with the typeface and type-style requirements of Rule 32(a)(5) and Rule 32(a)(6) because it was prepared using Microsoft Word 2013 in Times New Roman 14-point font.

/s/ *Andrew M. Bernie*
Andrew M. Bernie

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2026, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. I further certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Andrew M. Bernie*
Andrew M. Bernie