[ORAL ARGUMENT HELD JANUARY 22, 2026]

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

NICOLAS TALBOTT, et al.,

Plaintiffs-Appellees,

v.                                                                      No. 25-5087

UNITED STATES OF AMERICA, et al.,

Defendants-Appellants.

**REPLY IN SUPPORT OF MOTION TO STAY MANDATE PENDING
DISPOSITION OF PETITION FOR A WRIT OF CERTIORARI**

The Supreme Court has already stayed a preliminary injunction of the same

2025 policy at issue in this case pending its disposition of any petition for certiorari.

*United States v. Shilling*, 145 S. Ct. 2695 (2025). Yet in opposing the United States'

motion to stay the mandate, Plaintiffs contend that the United States' forthcoming

petition for certiorari will not even raise a "substantial question" for the Supreme

Court's review. That contention lacks merit.

Plaintiffs' assessment of the balance of equities is similarly flawed. The

Supreme Court necessarily determined when it granted a stay in *Shilling* that the

balance of the equities did not support leaving a preliminary injunction against the

same policy in place—including as to the named plaintiffs in that case. Plaintiffs

suggest that the Department has not (in their apparent view) moved *quickly enough* to separate them from service. But the Department has commenced the separation process for all of the Plaintiffs, just under half of the Plaintiffs have separated from the military, several others who remain have received separation notices with separation proceedings at various stages, the delays for some Plaintiffs are attributable to requests by their own counsel, and all of the Plaintiffs who remain in the military have been placed on administrative absence pending separation.

The Supreme Court has already determined that the 2025 policy should remain in place until it has an opportunity to consider that policy on its merits docket. This Court should follow the Supreme Court's direction in this materially identical challenge to the same policy and stay its mandate.

## ARGUMENT

**1.** The Department's forthcoming certiorari petition will present a "substantial question." Our motion (at 8-9) explained why, even putting aside *Shilling*, the divided panel opinion is at a minimum subject to reasonable disagreement and that there is a substantial likelihood that the Supreme Court will grant review. But the salient point is that *Shilling* is dispositive on the substantial-question issue (and as discussed below, on the good-cause issue as well).

In granting the stay in *Shilling*, the Supreme Court necessarily determined that the government had established a likelihood that the Court would grant certiorari

and that the Court would likely reverse if the injunction were affirmed. *See Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam). Plaintiffs stress that the stay order did not bind the panel's merits analysis here. Opp. 12. That is true and we did not contend otherwise. But the stay order necessarily establishes a likelihood of a certiorari grant and reversal, which of course means that a certiorari petition would present a substantial question.

And the *Shilling* stay, though dispositive on this point, does not stand alone. The panel's decision generated a robust dissent, and is contrary to the stay panel's decision. Mot. 3-5. The Supreme Court also previously stayed two injunctions against the Mattis policy. *Trump v. Karnoski*, 586 U.S. 1124 (2019); *Trump v. Stockman*, 586 U.S. 1124 (2019). And in recent years, the Supreme Court has granted certiorari (and ultimately reversed) in cases implicating both the level and the form of equal-protection scrutiny applicable to claims of discrimination against trans-identifying plaintiffs, *W. Virginia v. B.P.J.*, No. 24-38, 2026 WL 1868739, (U.S. June 30, 2026); *United States v. Skrmetti*, 605 U.S. 495 (2025), and the proper constitutional treatment of assertions of animus by the President or other senior Executive officials, *Mullin v. Doe*, Nos. 25-1083 and 25-1084, 2026 WL 1825840 (U.S. June 25, 2026); *Trump v. Hawaii*, 585 U.S. 667 (2018). Plaintiffs provide no meaningful response to this recent history.

Plaintiffs note that the relevant order is a preliminary injunction rather than a final judgment. Opp. 9. But any argument that the Supreme Court is unlikely to grant certiorari based on this circumstance is foreclosed by the stay order in *Shilling*—the order stayed there was also a preliminary injunction and in issuing that order the Court necessarily determined that it would likely grant certiorari if that injunction were affirmed. And in any event, the Supreme Court routinely grants certiorari in cases like this involving preliminary injunctions or other interlocutory relief. Indeed, that is true of *all* the cases cited in the preceding paragraph. *Skrmetti* involved a preliminary injunction. So did *Trump v. Hawaii*. So did *Little v. Hecox*, No. 24-38 (U.S.), the companion case to *B.P.J.* And *Mullin* even granted certiorari *before judgment* of stays of agency action.

Plaintiffs also contend that this case is "fact-bound." Opp. 10. But it is "fact-bound" only in the sense that the district court determined that the policy could not be supported by a sufficient basis, which is true of any injunction against a policy subject to rational-basis review (or any other level of scrutiny for that matter).

And the injunction in *Shilling* that the Supreme Court stayed was no less "fact-bound." The two injunctions of course analyzed the same policy. They were issued nine days apart. Like the injunction here, *see Talbott v. United States,* 775 F. Supp. 3d 283, 315 (D.D.C. 2025), the district court in *Shilling* concluded that the policy was likely subject to and likely flunked intermediate scrutiny (a conclusion that all

six judges of this Court who have reviewed this case have either rejected or at least not embraced), *Shilling v. United States*, 773 F. Supp. 3d 1069, 1092-1098 (W.D. Wash. 2025). Like the district court here, the district court in *Shilling* also found that the policy would not withstand even rational basis review because the government supposedly did not justify the policy with sufficient evidence. 773 F. Supp. 3d at 1098. Indeed, the supposed evidentiary shortcomings the district court there identified substantively mirror the district court's conclusions in this case, including that "there is no evidence that being transgender is inconsistent with 'honesty,' 'humility,' or 'integrity,'" *id.* at 1098, and criticism of reliance on supposedly dated analysis prior to adoption of the Mattis policy, *id.*

Indeed, that decision extensively cited to, quoted from, relied upon, and agreed with Judge Reyes' opinion. *Id.* at 1084, 1091-92. The court described the case before it as "parallel" to this one, stated that it had "read the briefing, the transcripts, and Judge Reyes's thorough memorandum opinion preliminarily enjoining implementation and enforcement of the Military Ban and the Hegseth Policy," and that "other than plaintiffs' declarations, the rest of the evidence appears to be *essentially identical*" between the two cases. *Id.* at 1077 n.2 (emphasis added). And the court there granted a preliminary injunction, purporting to find, like the district court here, that the United States "has in turn provided no evidence supporting the conclusion that military readiness, unit cohesion, lethality, or any of

5

the other touchstone phrases long used to exclude various groups from service have in fact been adversely impacted by open transgender service under the Austin Policy." *Id.* The Supreme Court nonetheless stayed that order pending its disposition of any certiorari petition. The interim-relief issue in this case should be treated the same. *Cf. Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025).

Plaintiffs contend that this case is distinguishable because the district court here concluded that the 2025 policy was motivated by animus. But the district court's animus conclusion was based on its reading of the policy, the Executive Order, and other sources that were fully before the Supreme Court. *See Talbott*, 775 F. Supp. 3d at 326-27 ("True, the Court cannot read minds. But it can read."). Plaintiffs similarly recognize that the animus conclusion "rested on the four corners of the governing documents themselves." Opp. 16. The Justices of the Supreme Court can also read. And although Judge Settle may have declined to characterize the policy as motivated by animus, his analysis closely tracked Judge Reyes's, including focusing on the same language of the policy. *Compare Shilling*, 773 F. Supp. 3d at 1098 (stating that "there is no evidence that being transgender is inconsistent with 'honesty,' 'humility,' or 'integrity,'"), *with Talbott*, 775 F. Supp. 3d at 327 (contending based on same language that policy "tag[s] transgender persons as weak, dishonorable, undisciplined, boastful, selfish liars who are mentally and physically unfit to serve"). And in opposing a stay in *Shilling*, the plaintiffs' lead argument on

6

their equal protection claim was that the policy was motivated by animus, relying on the same sources and language, which the plaintiffs characterized as "unabashedly demeaning," "animus-laden," "meritless," and "offensive." Response in Opposition to the Application for a Stay at 20-21, *United States. v. Shilling*, No. 24A1030 (U.S. Apr. 24, 2025). The Supreme Court nonetheless granted a stay. *See Shilling*, 145 S. Ct. at 2695.

Plaintiffs also contend that the injunction in *Shilling* may have simply reflected disagreement with the universal nature of the injunction there. Opp. 13. We already addressed this. Mot. 6 n.1. The Supreme Court—confronted with an application that asked for a stay of the injunction in its entirety *or* a stay except as to the individual plaintiffs—granted a stay in full. Plaintiffs protest that the Court there "gave no reasons," Opp. 13, but the Court's decision to grant a full stay necessarily reflected its view that the infirmities of that injunction were not limited to its universal scope. Plaintiffs also contend that the Supreme Court "stayed a district court injunction pending appellate review that had not yet occurred," and appellate review has now occurred here. Opp. 13-14. That ignores that the Supreme Court stayed the *Shilling* injunction also pending the disposition of any petition for certiorari.

**2.** There is plainly good cause for the requested stay. Issuing the mandate would dissolve the stay previously issued by the motions panel. So if (as shown

7

above) the Department satisfies the standards for a stay pending disposition of its forthcoming certiorari petition (which if anything are higher than a simple "good cause" standard), that qualifies as "good cause" for the requested stay. Plaintiffs do not contend otherwise.

And again, *Shilling* is dispositive. In granting a stay of that injunction pending the Court's future disposition of any petition for certiorari—including for the seven named plaintiffs in that case who were existing servicemembers—the Court necessarily found that the injunction's application even to a small number of servicemembers was causing irreparable harm to the government and to the public, and that the balance of equities did not justify leaving the injunction in place. *Hollingsworth*, 558 U.S. at 190. Again, Plaintiffs do not and cannot meaningfully dispute this. Virtually all of Plaintiffs' arguments in the opposition, including their contention that the government is not irreparably harmed by the injunction, were necessarily rejected by the Supreme Court in *Shilling*. The same is true of Plaintiffs' contention that they have individually served honorably and met military standards. Defendants appreciate Plaintiffs' service but the same arguments were front and center in the plaintiffs' briefing in *Shilling*, Response in Opposition to the Application for a Stay at 1, 21, 28, *United States. v. Shilling*, No. 24A1030 (U.S. Apr. 24, 2025), and the United States did not challenge the plaintiffs' assessment of their service records in that case either.

Plaintiffs' only real attempt to distinguish *Shilling* thus amounts to the argument that the Department should be denied a stay here because it supposedly has not acted swiftly enough to separate them from service since the stay was entered. Opp. 4-5. But the Department *has* moved swiftly to implement the policy, including as to Plaintiffs. As the accompanying declaration explains, "[t]he Department has commenced the separation process for each of the 29 plaintiffs in this case: 12 have been separated from service (one has not yet been accessed into the military), eight have been provided separation notices, two have been recommended for separation by an administrative separation board, and the remainder are in the medical verification process." Declaration of Timothy Dill (Dill Decl.) ¶ 8. Plaintiffs' declaration itself notes that roughly half of the Plaintiffs either retired or voluntarily separated following the policy or (in the case of one) has not yet accessed, and that several more have received separation notices, with separation proceedings at various stages. Haley Declaration ¶¶ 2-30.

Plaintiffs stress (Opp. 2) that none of the Plaintiffs have been "involuntarily separated from service." But all of these remaining Plaintiffs are in *administrative absence*: "Due to serious concerns over the medical fitness and deployability of Service members with gender dysphoria, the Department placed all plaintiffs unable or unwilling to serve consistent with their biological sex on administrative absence," and "[n]one of the plaintiffs opted to serve in accordance with their biological sex."

9

Dill. Decl. ¶ 9. Thus, issuing the mandate and dissolving the stay would alter the status quo and require the military to return to "'fit for full duty'" individuals who it has determined have a condition that do not meet its physical and medical deployability standards. Dill. Decl. ¶ 10.

In any event, Plaintiffs err in contending that a stay should be denied because the Department supposedly should have moved even more quickly. "Separation from the Armed Forces, whether through the process outlined in this policy, at the end of a service contract, or through retirement, is a complex and lengthy process." Dill. Decl. ¶ 4. And indeed, the delays as to several Plaintiffs resulted from delays that their attorneys requested. Dill. Decl. ¶ 8. And such delays are often granted in recognition of the procedural interests of members. Dill. Decl. ¶ 8. The government should not be required to halt this process for potentially another year while the Supreme Court decides this case.

Again, the Supreme Court has already determined that the Department should be permitted to implement the 2025 policy until the Supreme Court has an opportunity to consider the issue, including as to named plaintiffs whose asserted record of honorable service the United States has not contested. This Court accordingly should stay its mandate here.

## CONCLUSION

This Court should stay its mandate pending the disposition of a timely filed

petition for a writ of certiorari.

Respectfully submitted,

BRETT A. SHUMATE                    MARK R. FREEMAN
*Assistant Attorney General*           MICHAEL S. RAAB

ERIC D. McARTHUR                     /s/ *Andrew M. Bernie*
*Deputy Assistant Attorney General*    ANDREW M. BERNIE
                                     (202) 514-3511
                                        Attorneys, Appellate Staff
                                        Civil Division
                                        U.S. Department of Justice
                                        950 Pennsylvania Ave., N.W.
                                        Washington, D.C. 20530

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion satisfies the type-volume limitation in Rule 27(d)(2)(A) because it contains 2,327 words. This motion complies with the typeface and type-style requirements of Rule 32(a)(5) and Rule 32(a)(6) because it was prepared using Microsoft Word 2013 in Times New Roman 14-point font.

/s/ *Andrew M. Bernie*
Andrew M. Bernie

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2026, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system. I further certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Andrew M. Bernie*
Andrew M. Bernie