

**U.S. Department of Justice**

Civil Division, Appellate Staff
950 Pennsylvania Ave. NW
Washington, D.C. 20530

Tel: 202-514-3469
August 21, 2025

VIA CM/ECF
Clifton Cislak
Clerk, United States Court of Appeals for the D.C. Circuit
E. Barrett Prettyman United States Courthouse & William B. Bryant Annex
333 Constitution Ave., NW
Washington, DC 20001

    Re:   *Talbott v. United States*, No. 25-5087 (argued Apr. 22, 2025) – Response to Plaintiffs' Letter Request to Lift Administrative Stay

Dear Mr. Cislak:

    Plaintiffs seek to lift this Court's administrative stay of an injunction barring implementation of the Department of Defense's entire 2025 policy on the ground that *one* aspect of the *Air Force's* implementation of that policy—stating that servicemembers who wish to attend a separation hearing must abide by the Department's sex-specific policies for uniforms, grooming, and salutations—violates the Air Force plaintiffs' due process rights. Plaintiffs' letter request should be denied. Their new challenge cannot support a request to lift this Court's stay of the district court's sweeping injunction for at least two reasons: (1) plaintiffs' due-process claim is neither ripe nor a basis for reinstating the district court's injunction; and (2) requiring servicemembers to follow sex-specific standards when not on administrative absence (*i.e.*, at their separation hearing) does not violate due process.

    At the outset, plaintiffs are mistaken in contending that they face "immediate harm." Letter 2. Contrary to plaintiffs' representations, their separation hearings are not currently being scheduled; nor will they "be conducted imminently." Letter 2. As the attached Air Force guidance, issued August 12, 2025, makes plain, before any separations can occur, the Air Force first must designate a "General Officer" who will serve as the "separation initiating authority." Department of the Air Force Guidance Memorandum, at 2. The Air Force has yet to do so but anticipates designating an individual by August 26. *See id.* After that, the General Officer has 30 days to initiate involuntary separation procedures. *Id.* Once initiated, the

separation process takes additional time: Separation boards must be convened, a hearing must be scheduled, and the Secretary of the Air Force must provide a final disposition on separation. Plaintiffs' request for immediate relief is therefore premature, as the Air Force's policy memorandum is not causing them any immediate harm. And plaintiffs' request is misdirected: Plaintiffs' claim should not be raised in the first instance in this Court, and, in any event, it provides no basis for reinstating the district court's injunction, which has nothing to do with due process at separation hearings.

In any event, the Air Force policy does not violate procedural due process. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). Plaintiffs have no property or liberty right to continued employment in the military, *see, e.g.*, *Christoffersen v. Washington State Air Nat'l Guard*, 855 F.2d 1437, 1443 (9th Cir. 1988), and they therefore have no procedural due process rights in any discretionary process the military creates to facilitate their separation.

Moreover, under the 2025 policy, all servicemembers who are not on administrative leave must adhere to sex-specific standards when serving. These standards are lawful and currently in effect. *See* Order Granting Administrative Stay (Mar. 27, 2025); *United States v. Shilling*, --- S. Ct. ---, 2025 WL 1300282, at *1 (U.S. May 6, 2025). Plaintiffs cannot transform a losing equal protection claim into a winning due process claim merely by pointing out that the same valid sex-specific standards apply in military hearings just like in all other military settings. Just as the military would not have violated due process by applying the policy in *Goldman v. Weinberger*, 475 U.S. 503 (1986), to military hearings—thereby prohibiting someone like Goldman from wearing a yarmulke at a military hearing—so too the military does not violate due process by applying the standards at issue here to military hearings.

Even if plaintiffs could establish a protected liberty or property right, the Air Force policy affords plaintiffs all the process they are due. All due process requires is an opportunity to be heard—not an opportunity to be heard in the specific manner in which plaintiffs would prefer to appear. *See Mathews v. Eldridge*, 424 U.S. 319 (1976) (the Due Process Clause does not require an opportunity to participate at an oral hearing prior to termination of disability benefits). Indeed, "[t]he nature of a due process hearing is shaped by the risk of error inherent in the truthfinding process." *Califano v. Yamasaki*, 442 U.S. 682, 696 (1979) (quotations omitted). Here, that risk is nonexistent, as plaintiffs do not appear to dispute the basis for their

separation—namely, a history or diagnosis of gender dysphoria—and do not suggest that conforming to sex-specific standards changes anything about the basis for their separation. If anything, their objection to abiding by sex-specific standards at an official military proceeding underscores the Department's determination that that 2025 policy is supported by the need for good order and discipline. The Court should deny plaintiffs' request.

    Sincerely,

    */s/ Amanda L. Mundell*
    Amanda L. Mundell



**DEPARTMENT OF THE AIR FORCE**
WASHINGTON DC

OFFICE OF THE ASSISTANT SECRETARY

DAFI36-3211_DAFGM2025-01

12 August 2025

MEMORANDUM FOR DISTRIBUTION C
                MAJCOMs/FLDCOMs/FOAs/DRUs

FROM: SAF/MR
       1800 Air Force Pentagon
       Washington, DC  20330-1665

SUBJECT: Department of the Air Force Guidance Memorandum (DAFGM) to DAFI 36-3211, *Military Separations*

      By order of the Secretary of the Air Force, this Department of the Air Force Guidance Memorandum (DAFGM) implements changes to DAFI 36-3211, *Military Separations*. Compliance with this memorandum is mandatory. To the extent its directions are inconsistent with other DAF publications, the information herein prevails, in accordance with Department of the Air Force Instruction (DAFI) 90-160, *Publications and Forms Management*.

      As directed by the Secretary of Defense in his February 7, 2025, memorandum, "Prioritizing Military Excellence and Readiness," it is Department policy that, pursuant to Executive Order 14183, "Prioritizing Military Excellence and Readiness," the medical, surgical, and mental health constraints on individuals who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria are incompatible with the high mental and physical standards necessary for military service.

      As further directed by Performing the Duties of the Under Secretary of Defense for Personnel and Readiness Memorandum, "Additional Guidance on Prioritizing Military Excellence and Readiness," service members who have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria and are not granted a waiver will be processed for administrative separation in accordance with, and afforded all applicable administrative processing protections in DoDI 1332.14, *Enlisted Administrative Separations* or DoDI 1332.30, *Commissioned Officer Administrative Separations*. Further, the Secretaries of the Military Departments are directed to initiate the administrative separation of: (1) any enlisted Service member prior to the expiration of the member's term of service following a determination that doing so is in the best interest of the relevant Military Service; or (2) any officer whose retention is not clearly consistent with the interests of national security.

Pursuant to this guidance, DAF enlisted members will be separated under the Secretary of the Air Force's Plenary Authority to Direct Discharge. DAF officers will be separated on the basis that their retention is not clearly consistent with national security. Special processing requirements for members of the Air Force Reserve and Air National Guard are addressed in Attachment 3. The Judge Advocate General is authorized to promulgate additional operating procedures and implementation guidance in furtherance of this memorandum for the purpose of ensuring fair, accurate, and timely proceedings and processing.

Service members are ineligible for referral to the Disability Evaluation System (DES) when they have a current diagnosis or history of, or exhibit symptoms consistent with, gender dysphoria, not constituting a physical disability pursuant to DoDI 1332.18, *Disability Evaluation System*. Service members may be referred to the DES if they have a co-morbidity, or other qualifying condition, that is appropriate for disability evaluation processing in accordance with DoDI 1332.18, prior to processing for administrative separation.

Service members who are processed for separation pursuant to this policy will be designated as non-deployable until their separation is complete.

Service members separated involuntarily pursuant to this policy may be provided full involuntary separation pay in accordance with 10 U.S.C. § 1174 and DoDI 1332.29, *Involuntary Separation Pay* (Non-Disability).

All enlisted Service members who are involuntarily separated pursuant to this policy will, if desired by the Service member, be afforded an administrative separation board. All officers who are involuntarily separated pursuant to this policy will be afforded a Board of Inquiry, if desired by the officer, in accordance with 10 U.S.C. § 1182.

United States Air Force Academy (USAFA) cadets who are disqualified for military service will be disenrolled and discharged under the provisions of DAFI 36-3501, *United States Air Force Academy Operations*. USAFA Cadets will be afforded a Board of Inquiry under the provisions of DAFI 36-3501, para. 4.2.6.8 as modified by Attachment 4.

Cadets in other commissioning programs and other accessions disqualified from military service will be disenrolled and discharged under the provisions of DAFMAN 36-2032, *Military Recruiting and Accessions*.

Within two (2) weeks of the date of this memorandum, the CSAF will designate a General Officer to serve as the Consolidated disposition Authority (CDA). This General Office will be in a non-operational, non-joint assignment not within the chain of command of the AF/A1, Surgeon General of the Air Force or Judge Advocate General (JAG) of the Air Force. The CDA is the officer show cause authority and enlisted separation initiating authority for all DAF Service Members separated under this memorandum. The CDA will initiate involuntary separation procedures for all Service members identified as non-compliant with medical standards outlined in this memorandum within 30 days of such notification. The CSAF and CSO will ensure all Service members identified for involuntary separation pursuant to these policies

2

are referred to the CDA, who will in turn exercise jurisdiction over all qualifying Air Force and Space Force personnel for purposes of involuntary separation procedures.

Discharge boards for members involuntary separated pursuant to this policy will be carried out under the procedures contained in DAFI 36-3211 and DAFMAN 51-507, *Enlisted Discharge Boards and Boards of Officers* as supplemented by Attachment 4. References to officers in this guidance include both commissioned and warrant officers, in accordance with AFGM2025-36-2033, *Air Force Guidance Memorandum Reimplementing Warrant Officers*.

The Department of the Air Force may recoup any bonuses received prior to the date of this memorandum for Service members who are involuntarily separated.

Nothing in this guidance memorandum or its attachments preclude appropriate administrative or disciplinary action for DAF service members who refuse orders from lawful authority to comply with applicable standards or otherwise do not meet standards for performance and conduct.

The policy guidance contained herein and in the attachments: (1) supersede any conflicting policy guidance in Department of the Air Force issuances and other policy guidance and memoranda; and (2) is effective immediately and will be incorporated into respective Department issuances, as appropriate. To request a waiver of or non-tiered compliance items in this memorandum and its attachments, submit requests to the SAF/MR Executive Order Tiger Team at SAF.mreo.readinessTigerTeam@us.af.mil.

Ensure all records generated as a result of processes prescribed in this publication adhere to Air Force Instruction (AFI) 33-322, *Records Management and Information Governance Program*, and are disposed in accordance with the Air Force Records Disposition Schedule which is located in the Air Force Records Information Management System. This instruction requires the collection and/or maintenance of information protected by the Privacy Act of 1974 authorized by Title 10 United States Code (U.S.C.), Section 1169, Regular enlisted members; Limitations on Discharge; and Executive Order 9397, Numbering System for Federal Accounts Relating to Individual Persons; and Executive Order 13478, Amendments to Executive Order 9397 Relating to Federal Agency Use of Social Security Numbers. The applicable SORNs F036 AFPC P, Separation Case Files, (Officer and Airman), F033 ARPC B, Locator or Personnel Data, and F036 AFPC C, Military Personnel Records System are available at http://dpclo.defense.gov/Privacy/SORNs.aspx.

The following regulations will be used to ensure appropriate procedures are being followed when actions are initiated. These protections are required when transmitting medical examinations and supporting documents: DoDI 6025.18, Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule Compliance in DoD Health Care Programs, DoDM 6025.18 Implementation of the Health Insurance Portability and Accountability Act (HIPAA) Privacy Role in DoD Health Care Program, and AFI 41-200, Health Insurance Portability and Accountability Act (HIPAA).

      This memorandum becomes void after one year has elapsed from the date of this memorandum, or upon publication of an interim change (IC) or rewrite of the affected publication, whichever is earlier.

                                          BRIAN SCARLETT, SES, DAF
                                          Performing the Duties of the Assistant Secretary of
                                              the Air Force for Manpower and Reserve Affairs

Attachments:
1. Separation of Enlisted Members
2. Separation of Commissioned Officers
3. ARC Specific Guidance
4. Board Procedures